**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELVIN JOAQUIN, | : | |
| | : | Civil No. 05-3338 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| JOHN NASH, WARDEN, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

    ELVIN JOAQUIN, Petitioner pro se
    #61425-053
    F.C.I. Fort Dix
    P.O. Box 7000
    Fort Dix, New Jersey 08640

    JOHN ANDREW RUYMANN, ESQ.
    United States Attorney's Office
    402 East State Street, Suite 430
    Trenton, New Jersey 08608
    Counsel for Respondent

**KUGLER, District Judge**

    This matter is before the Court on petitioner Elvin Joaquin's ("Joaquin") application for habeas corpus relief under 28 U.S.C. § 2241, challenging a disciplinary proceeding at FCI Fort Dix in which sanctions were imposed resulting in, among other things, the loss of good conduct time.  Joaquin asserts that he was denied due process and seeks restoration of his good

conduct time and expungement of the incident report from his record.

The Government filed an answer to the petition on or about September 16, 2005, with a copy of the relevant record for review.  Joaquin submitted a written objection to the respondent's answer on October 7, 2005.  The Court has reviewed all documents submitted and, for reasons now discussed, will deny this petition for lack of merit.

## BACKGROUND

At the time the alleged disciplinary infraction occurred, Joaquin was confined at FCI Fort Dix in Fort Dix, New Jersey, serving a 46 month prison term as imposed by the United States District Court for the Eastern District of New York, on May 2, 2003, following his conviction of federal drug crimes.  Joaquin has a projected release date of May 9, 2006.  He is currently confined at a community corrections center in New York.

On December 27, 2004, Joaquin received an incident report charging him with the prohibited conduct of use of telephone for abuse other than criminal, in violation of Code 297.  The reporting officer, N. Thornton, issued the incident report, which describes the event as follows:

> On December 21, 2004, at approximately 15:20, this writer questioned inmate Joaquin, Elvin regarding a telephone call that he had placed on 12/18/04 @ 1942, to 201-362-0549.  I questioned I/M Joaquin because when he placed this call, he circumvented the inmate telephone system by relaying messages for an inmate that was in the background, who is

2

> currently on phone restriction, according their conversation. In this call he referred to the other inmate as "Wells", "Weldy" and "Mario". They also mentioned the inmate was on phone restriction, is due to get out next year and is currently on visiting restriction. Inmate Jimenez, Mario #50428-083, has all these things in common, (2005 release with halfway house). At [sic] asked Joaquin if he knew inmate Jimenez, Mario and if he knew that he goes by "Wells" and "Weldy". Joaquin stated "yea". I then asked if he remembered placing the above mentioned telephone call and relaying messages and he said "Yea. But I didn't know it was illegal."

See Declaration of Diana Jacobs Lee, Assistant Regional Counsel, dated September 9, 2005 ("Lee Decl."), Exhibit 3 - Incident Report No. 1294484, Section 11.

The matter was investigated and Joaquin admitted to the Investigating Lieutenant that he made the call for Inmate Jimenez, but did not know that he could get in trouble for doing so. The Investigating Lieutenant concluded that the charge for violating Code 297 was warranted. (Lee Decl., Ex. 3 at Section 24, 26). The incident report was forwarded to the Unit Disciplinary Committee ("UDC") and the UDC then transferred the matter to the Disciplinary Hearing Officer ("DHO") for a disciplinary proceeding. (Lee Decl., Ex 3, Part II).

The DHO initiated a hearing at FCI Fort Dix on January 12, 2005. Joaquin had been notified of the charge and advised of his rights, including the right to a staff representative, before the disciplinary hearing. Joaquin waived his right to a staff representative. He also did not request any witnesses to appear at the hearing. (Lee Decl., Ex. 4 - DHO Report, Parts I, II and

III).  At the DHO proceeding, Joaquin gave a statement in which he acknowledged that he had made the telephone call and was relaying messages for Inmate Jimenez.  Joaquin again stated that he was not aware that his conduct was prohibited.  (Lee Decl., Ex 4 at Part III).  The DHO also considered the Telephone Monitoring Report and Telephone Activity Report.  (Id.).

Based on the evidence and facts provided to the DHO at the hearing, the DHO concluded that Joaquin had committed the prohibited act as charged.  The DHO imposed the following sanctions: 30 days disciplinary segregation, 27 days loss of good conduct time, 27 days forfeiture of non-vested good conduct time, and loss of telephone privileges for 545 days.  (Lee Decl., Ex. 4 at Parts IV, V, VI, and VII).

The DHO Report informed Joaquin of his right to appeal the disciplinary action within 20 calendar days.  The DHO Report was provided to Joaquin on January 14, 2005.

Joaquin filed an administrative appeal to the Northeast Regional Office of the Bureau of Prisons ("BOP") pursuant to 28 C.F.R. § 542.14(D)(2).  It was received by the Regional Office on February 28, 2005.  In a Rejection Notice dated March 2, 2005, the Regional Office rejected the appeal as untimely because it had not been provided by Joaquin within 20 days of his receipt of the DHO report.  The notice allowed Joaquin to provide written verification from BOP staff on BOP letterhead that petitioner's

4

untimeliness was not his fault.  Joaquin did not provide any written verification and the administrative appeal process concluded.  (Lee Decl. At Ex. 2).

## II.  CLAIMS PRESENTED

In his petition, Joaquin asserts that the disciplinary charge is unconstitutionally vague, that his right to due process was violated because the conduct in which he was engaged did not constitute a prohibited three-way call, and that his procedural default of his administrative remedies should be excused because his right to due process was violated.

## III.  DISCUSSION

A.  Standard of Review

Joaquin seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United

5

States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Applicable Regulations

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because it was designated as a Code Level 200 category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17. These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d). The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions. 28 C.F.R. § 541.17(g). A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days. Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974). See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

D.  Exhaustion of Administrative Remedies

Respondent first argues that the petition should be dismissed because Joaquin failed to exhaust his administrative remedies, set forth at 28 U.S.C. § 542.10 et seq., in appealing the DHO's decision.  Petitioner argues that any procedural default with respect to administrative remedies should be excused because his right to due process was violated.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v.

8

Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, it appears that Joaquin attempted to exhaust his administrative remedies, but his attempts were rejected as untimely. This Court finds that any further effort by Joaquin in exhausting his administrative remedies at this juncture would be futile. Moreover, a sufficient factual record has already been developed with respect to the disciplinary proceeding at issue. Accordingly, for the most part, the purposes of the exhaustion requirement do not readily apply in this case, and the Court will review the merits of the petition rather than dismiss it on this procedural ground.

E.  Merits of Petitioner's Claims

   1.  *Petitioner Was Afforded Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections. U.S.

Const. amend. XIV. In <u>Wolff v. McDonnell</u>, <u>supra</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings. An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Wolff</u>, 418 U.S. at 563-71. An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings. <u>See</u> <u>Von Kahl</u>, 855 F. Supp. at 1418 (citing <u>Wolff</u>, 418 U.S. at 563-72).

In this case, there are no assertions that any of these procedural due process requirements were not met. Rather, Joaquin disputes the validity of the disciplinary charge, asserting that the charge is unconstitutionally vague and that his conduct did not constitute the prohibited act for which he was charged.

2.  *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record."

Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991). The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted). Moreover, the Court stated: "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination. The DHO's Report demonstrates that, after an investigation and the DHO's consideration of all the relevant evidence, namely, the petitioner's admission about the phone call, the telephone monitoring report, and the notice provided by the Inmate Admission and Orientation Handbook, the DHO found that the greater weight of evidence supported a finding that Joaquin did commit the prohibited act involving a three-way phone conversation in violation of Code 297. This determination

11

was based on the DHO's finding that the conversation demonstrated that the participants in the call were aware that it was a three way phone conversation.  Petitioner also admitted that he was aware of Inmate Jimenez's telephone restriction.  The DHO's report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary."  Hill, 472 U.S. at 457.

Therefore, based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by petitioner, except his self-serving denial of intent or knowledge that such conduct was prohibited, the Court finds that Joaquin's right to due process was not violated by the determination of the DHO.[1]  The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt.  See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

---

[1] Further, the sanctions imposed were consistent with the severity level of the prohibited act.  They were within the maximum authorized under BOP regulations for Joaquin's charged offense, and were not disproportionate to Joaquin's charged misconduct.  See 28 U.S.C. § 541.13, Tables 3 and 4.

3.  *Code 297 Was Not Unconstitutionally Vague*

Next, Joaquin argues that the code violation is unconstitutionally vague and that his conduct did not constitute a prohibited act as charged.

"It is a basic principle of due process that a law is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).  In the context of prison regulations, "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions." Meyers v. Aldredge, 492 F.2d 296, 310 (3d Cir. 1974).  Thus, "vagueness principles must be applied in light of the legitimate needs of prison administration."  Id. at 311.  Because "legalistic wrangling" over the meaning of prison rules "may visibly undermine the [prison] administration's position of total authority," federal courts have deferred to the interpretation of those rules by prison authorities "unless fair notice was clearly lacking."  Hadden v. Howard, 713 F.2d 1003, 1008 (3d Cir. 1983) (quoting Meyers, 492 F.2d at 311).

Here, Joaquin asserts that the proscription against three way phone conversations is so vague as to be unconstitutional because it does not provide sufficient notice to petitioner that

13

his charged conduct was prohibited.  The Inmate Admissions and Orientation Handbook[2] informs inmates that they are prohibited from sharing their phone time and that they are prohibited from engaging in three way conversations on the phone.  Moreover, Code 297 prohibits telephone activities that "circumvent telephone monitoring procedures" such as the three-way phone conversations employed by petitioner in this instance.  See 28 C.F.R. § 541.13 Table 3.  In the circumstances presented here, there can be no doubt that the language of Inmate Admission and Orientation Handbook, Code 297, and § 541.13 are sufficient to provide "fair notice" to an inmate that three way phone conversations or the sharing of phone time are prohibited.

    Joaquin seems to suggest that he did not permit the other inmate to physically use the telephone, nor did he conduct a "three-way call", which requires one party to be placed on hold so that all three participants can be "conferenced" on the phone call.  The Court finds these arguments or distinctions to be immaterial because the DHO reasonably determined that Joaquin shared his telephone time with another inmate, Jimenez, who Joaquin knew to be phone restricted.  Further, Joaquin, Jimenez, and the woman on the other end of the telephone call engaged in a three-way conversation with Joaquin acting as the middleman, relaying conversation between Jimenez and the woman.  Finally,

---

    [2]  See Lee Decl., Ex. 5.

14

the Inmate Telephone Monitoring Report, which was attached to the Incident Report, shows that the sole purpose of the call placed by Joaquin was to facilitate the communication by Jimenez with the woman through Joaquin.  This conduct plainly violates the clear and unequivocal phone restrictions set forth in the Inmate Admissions and Orientation Handbook, and constitutes the prohibited use of the telephone as proscribed under Code 297 with respect to circumventing telephone monitoring procedures.  Accordingly, Joaquin is not entitled to relief on his "vagueness" claim and his due process claim.

## CONCLUSION

Based upon the foregoing, Joaquin's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, will be denied for lack of substantive merit.  An appropriate Order accompanies this Opinion.

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: March 24, 2006